# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DISTRICT

| | | |
|---|---|---|
| In re: | ) | Case No.:  14-44811-399 |
| | ) | Honorable Barry S. Schermer |
| JAMAT, LLC, | ) | Chapter 11 Proceeding |
| | ) | |
| | ) | Hearing Date:  June 23, 2014 |
| Debtor. | ) | Hearing Time:  9:30 a.m. |
| | ) | Location:   Courtroom 5 North |
| | ) | |
| | ) | Motion No.:  __ |
| | ) | |
| | ) | Spencer P. Desai, Esq. |
| | ) | Danielle Suberi, Esq. |
| | ) | Desai Eggmann Mason LLC |
| | ) | 7733 Forsyth Boulevard, Suite 2075 |
| | ) | St. Louis, Missouri 63105 |
| | ) | (314) 881-0800 |
| | ) | sdesai@demlawllc.com |
| | ) | dsuberi@demlawllc.com |

## AFFIDAVIT OF BARRY SEIDEL
## IN SUPPORT OF CERTAIN FIRST DAY MOTIONS AND APPLICATIONS

Barry Seidel, having been duly sworn, states as follows:

1. My name is Barry Seidel and I am President and fifty percent (50%) owner of Jamat, LLC which does business as Mattress Source.  My wife, Valerie, owns the other fifty percent (50%) of Jamat, LLC.  I am familiar with the day-to-day operations, business affairs and books and records of the Debtor and this Affidavit accurately summaries my testimony if called as a witness before the Court.

2. On June 13, 2014 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of Missouri.  The Debtor intends to continue in the possession of its properties and the management of its business as debtor-in-possession

1

pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed, and no official committee of creditors or equity interest holders has been established in this Chapter 11 case. In order to enable Debtor to operate effectively and to avoid the adverse effects of the Chapter 11 filing, the Debtor will request various types of relief in "first day" applications and motions filed with the Court.

3. I submit this affidavit in support of the first day applications and motions in the above captioned Chapter 11 cases. Any capitalized term not expressly defined herein shall have the meaning ascribed to that term in the relevant first day motion or application. Except as otherwise indicated, all facts set forth in this affidavit are based upon my personal knowledge, my review of relevant documents, or my opinion, based upon my experience and knowledge of the Debtor's operations and financial condition or information reported to me in the course of my duties by the Debtor's officers, agents, or employees. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this affidavit.

4. Part I of this affidavit describes Debtor's business and the circumstances surrounding the filing of Debtor's Chapter 11 petition. Part II sets forth the background of the prepetition secured debt, and Part III sets forth the relevant facts in support of the various first day applications and papers filed concurrently herewith.

## I. BACKGROUND

5. The Debtor operates eleven (11) retail locations in the St. Louis area. The Debtor sells mattresses and bedding supplies. The Debtor has been in business since 2008.

6. The decision to seek protection in bankruptcy came after careful consideration. The bankruptcy proceeding will allow the Debtor to conduct store closing sales and close several

2

unprofitable locations. Following the closure of these locations the Debtor will be able to operate profitably by eliminating the losses incurred from underperforming locations.

## II. MOTIONS AND APPLICATIONS

7. An important element of Debtor's successful Chapter 11 case is approval of each of Debtor motions and applications submitted concurrently herewith. Factual information in support of such orders is provided below and in the applications and motions filed concurrently herewith.

### Retention of Desai Eggmann Mason LLC

8. The Debtor seeks to employ Desai Eggmann Mason LLC ("DEM") as counsel in the bankruptcy cases. DEM has advised the Debtor regarding the filings and is uniquely familiar with Debtor's business and legal affairs as more fully set forth in the Application for the retention of DEM and the Affidavit of Spencer P. Desai.

9. Debtor selected the firm of DEM as attorneys because of the firm's experience and knowledge in the field of Debtor's and creditors' rights and business reorganizations under Chapter 11 of the Bankruptcy Code.

10. Debtor desires to employ the firm of DEM on an hourly basis because of the extensive legal services that will be required in connection with the Chapter 11 case.

11. The services of attorneys are necessary in order to enable Debtor to faithfully execute its duties as debtor in possession. Subject to further order of this Court, DEM will be required to render, among others, the following services to the Debtor:

    a. Advising Debtor with respect to its rights, power and duties in this case;

    b. Assisting and advising Debtor in its consultations with any appointed committee relative to the administration of this case;

    c. Assisting Debtor in analyzing the claims of creditors and negotiating with such creditors;

3

      d.      Assisting Debtor with investigation of the assets, liabilities and financial condition of Debtor and reorganizing Debtor's businesses in order to maximize the value of Debtor's assets for the benefit of all creditors;

      e.      Advising Debtor in connection with the sale of assets or business;

      f.      Assisting Debtor in analysis of and negotiation with any appointed committee or any third party concerning matters related to, among other things, the terms of a plan of reorganization;

      g.      Assisting and advising Debtor with respect to any communications with the general creditor body regarding significant matters in this case;

      h.      Commencing and prosecuting necessary and appropriate actions and/or proceedings on behalf of Debtor;

      i.      Reviewing, analyzing or preparing, on behalf of Debtor, all necessary applications, motions, answers, orders, reports, schedules, pleadings and other documents;

      j.      Representing Debtor at all hearings and other proceedings;

      k.      Conferring with other professional advisors retained by Debtor in providing advice to Debtor; and

      l.      Performing all other necessary legal services in this case as may be requested by Debtor in these Chapter 11 proceedings; and

      m.      Assisting and advising Debtor regarding pending arbitration and litigation matters in which Debtor may be involved, including continued prosecution or defense of actions and/or negotiations on the Debtor behalf.

12.    DEM has indicated a willingness to act on behalf of Debtor.

13.    To the best of Debtor's knowledge, Spencer Desai and the other members, counsel, and associates of the firm of Desai Eggmann Mason LLC (i) do not have any connection with Debtor, its affiliates, creditors, or any other parties in interest, or their respective attorneys and accountants, (ii) are "disinterested persons," as that term is defined in Section 101(14) of the Bankruptcy Code, and (iii) do not hold or represent any interest adverse to the estate, except as set forth herein and in the affidavit and statement of Spencer Desai, a partner of Desai Eggmann Mason LLC, filed concurrently herewith.

4

## **Cash Collateral**

14. The Debtor requires the use of Cash Collateral to continue its business operations and to pay its regular daily expenses, including employees' wages, utilities, and its other costs of doing business.

15. The Debtor requires cash collateral to meet post-petition payroll, to pay necessary business expenses, and to continue their operations. A Consolidated Monthly Budget, showing the amount of funds needed to maintain Debtor combined operations until the entry of a final order permitting use of cash collateral, is included as **Exhibit A** to the various motions seeking authority to use cash collateral.

16. The Debtor has filed a motion seeking authority to use cash collateral with Arsenal Credit Union.

17. The Debtor does not have sufficient available sources of working capital and financing to carry on the operation of its business without use of the Cash Collateral. The Debtor's ability to preserve its relationship with vendors and suppliers, to pay its employees, and to otherwise finance its operations, is essential to the Debtor's continued viability.

18. Arsenal Credit Union has a first priority lien in the Debtor's inventory, equipment, accounts and proceeds of those items. Debtor proposes maintaining existing payment terms with Arsenal Credit Union and providing Arsenal Credit Union a super priority replacement lien in all post-petition collateral to the extent those liens existed pre-petition. The Debtor believes that Arsenal Credit Union is over secured. The Debtor had assets with a value in excess of $1 Million Dollars on the date of filing. The amount owed to Arsenal Credit Union is approximately $500,000.00.

**Maintenance of Cash Management System**

19. Debtor has requested authority to continue using its existing bank accounts, cash management system, and business forms in its *Motion for Order Authorizing Continued Use of Certain Existing Bank Accounts and Certain Business Forms* (the "Bank Account Motion").

20. Debtor maintains multiple bank accounts at a various banks as listed below.

| Bank Name | Bank Address | Account # | Name on Account and Type of Account |
|---|---|---|---|
| US Bank | 3900 Vogel Road, Arnold, MO 63010 | XXXXXXX4169 | Jamat, LLC Business Checking Arnold and High Ridge locations |
| US Bank | 3900 Vogel Road Arnold, MO 63010 | XXXXXXXX1065 | Jamat, LLC Business Checking Loughborough location |
| US Bank | 3900 Vogel Road Arnold, MO 63010 | XXXXXXXX9926 | Jamat, LLC Business Checking Clarkson and Overland locations |
| US Bank | 3900 Vogel Road Arnold, MO 63010 | XXXXXXXX7071 | Jamat, LLC Business Checking Eureka, Mid Rivers, O'Fallon, Clarkson, Overland, Fairview Heights, Loughborough, Telegraph and Eureka locations |
| US Bank | 3900 Vogel Road Arnold, MO 63010 | XXXXXXXX9622 | Jamat, LLC Business Checking Eureka and Edwardsville locations |
| Arsenal Credit Union | 3780 Vogel Road Arnold, MO 63010 | XXXXXX-0905 | Jamat, LLC Business Checking All locations |
| Bank of America | 1311 South Fifth Street St. Charles, MO 63301 | XXXXXXXX7121 | Mattress Source Business Checking Mid Rivers, St. Charles locations |
| PNC Bank | 2500 Green Mount Commons Drive Belleville, IL 62221 | XXXXXX4632 | Jamat, LLC Business Checking Belleville, Telegraph and O'Fallon locations |

6

21. The Debtor maintains an operating account for each retail location and then separate payroll and primary operating accounts. It is important for the Debtor's cash management and the safety and security of its employees to be able to make daily deposits at a bank close to each retail location.

### Business Necessity to Pay Pre-Petition Employee Claims

22. Debtor has requested authority to pay outstanding pre-petition Employee wages and benefits under the *Emergency Motion for Order Authorizing Payment of Pre-Petition Wages, Salaries, Reimbursable Employee Expenses and Employee Benefits and to Authorize Payment of Pre-Petition and Post-Petition Insider Wages in the Ordinary Course of Business* ("Wage Motion").

23. Debtor currently employs thirty-seven (37) salaried and hourly employees, which include management, office staff, and sales staff. All employees will suffer extreme hardship if they were to lose or incur any delay in receiving their pay and/or benefits.

24. Failure to pay the pre-petition employee claims (the "Pre-Petition Employee Claims") as described and identified in the Wage Motion would cause Debtor's employees to suffer undue hardships and, in many instances, financial difficulties because such amounts are necessary to enable employees to meet their respective personal, household and family obligations. Such a result would obviously destroy employee morale and result in unmanageable employee turnover. The Debtor submits that any significant deterioration in morale at this time will substantially and adversely impact the Debtor and its ability to reorganize, thereby resulting in immediate and irreparable harm to the Debtor and its estates.

25. In addition, the Debtor believes that all of the Pre-Petition Employee Claims will be entitled to priority status. Upon my information and belief, no single employee is owed more than $11,750.00 in total Pre-Petition Employee Claims. Thus, these employees would be entitled to seek priority status for their claims under Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

26. To the extent that payment of the amounts described in the Wage Motion may subsequently be determined to be greater than a recipient thereof would otherwise have received if this case was commenced or proceeded under Chapter 7 of the Bankruptcy Code, Debtor (or any subsequently appointed Trustee) expressly reserve the right to seek recovery of such payments.

27. Debtor submits that the amounts to be paid to employees pursuant to the Wage Motion are reasonable compared with the importance and necessity of the services of the employees and the losses Debtor will likely suffer if those amounts are not paid.

28. The requested relief also will reduce significantly the administrative burden which otherwise might be imposed in the Chapter 11 case. For Debtor to identify whether and to what extent individual employees hold priority or general unsecured claims for employee benefits, and to modify benefit policies to enforce these distinctions, would impose additional burdens of administration and expense which seem unwarranted under the circumstances of these cases.

29. The Debtor has two (2) employees considered insiders, Barry and Valerie Seidel. Our involvement in the Debtor's business operations is critical to the reorganization process. We also rely upon compensation from the Debtor as our primary source of income.

30. We are not seeking any additional sums beyond those which we receive in the ordinary course of the Debtor's business.

## Motion to Reject Overland Lease

31. Debtor has requested authority to reject the Overland Plaza lease effective June 21, 2014.

32. The Overland Plaza location operates at a loss and the immediate closing of this location would reduce costs to the Debtor and have a positive economic impact.

33. I have advised the landlord in person and in writing of my intent to close this location. The Debtor will vacate the location and leave it in broom-swept condition prior to surrendering it to the landlord.

## Motion to Authorize Store Closing

34. Debtor has also filed a motion to authorize a store closing sale.

35. While the Debtor evaluates how many, and which retail locations it should close, it is important to conduct a store closing sale. The three locations identified in the Motion are losing money. Closing them will reduce losses for the Debtor.

36. The store closing sale will allow the Debtor to reduce excess inventory in the store locations being closed and also to generate sales throughout all locations in a traditionally slow time of year.

37. The store closing sale will not harm or impair any creditor, secured or unsecured, and will serve to enhance and expedite the Debtor's reorganization process.

38. I have reviewed the store closing plan with Arsenal Credit Union and they have consented to the proposed closings.

FURTHER AFFIANT SAYETH NOT.

*/s/ Barry Seidel*

Barry Seidel

| | |
|---|---|
| STATE OF MISSOURI | ) |
| | ) SS. |
| COUNTY OF ST. LOUIS | ) |

On this 17th day of June, 2014, before me, the undersigned, a Notary Public, in and for the County and State aforesaid, personally appeared **Barry Seidel**, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in Madison County, Illinois, the day and year last above written.

                                           */s/ Nancy J. Neske*
                                           _____
                                           Notary Public in and for said County and State

My Commission Expires:

October 19, 2017