UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | | |
|---|---|---|
| In re: | ) | Case No.: 14-4481-399 |
| | ) | Honorable Barry S. Schermer |
| JAMAT, LLC, | ) | Chapter 11 Proceeding |
| | ) | |
| Debtor. | ) | MOTION FOR AUTHORITY TO |
| | ) | ENTER INTO LIQUIDATION |
| | ) | CONSULTANT AGREEMENT AND |
| | ) | FOR AUTHORITY TO CONDUCT |
| | ) | GOING-OUT-OF-BUSINESS SALES |
| | ) | |
| | ) | Hearing Date: April 8, 2015 |
| | ) | Hearing Time: 2:00 p.m. |
| | ) | Hearing Location: Courtroom 5 North |
| | ) | Response Due: April 1, 2015 |
| | ) | |
| | ) | Spencer P. Desai, Esq. |
| | ) | Danielle Suberi, Esq. |
| | ) | Desai Eggmann Mason LLC |
| | ) | 7733 Forsyth Boulevard, Suite 2075 |
| | ) | St. Louis, Missouri 63105 |
| | ) | (314) 881-0800 |
| | ) | sdesai@demlawllc.com |
| | ) | dsuberi@demlawllc.com |

## MOTION FOR AUTHORITY TO ENTER INTO LIQUIDATION CONSULTANT AGREEMENT AND FOR AUTHORITY TO CONDUCT GOING-OUT-OF-BUSINESS SALES

COMES NOW Jamat, LLC d/b/a/ Mattress Source ("Debtor"), by and through counsel, and for its *Motion for Authority to Enter into Liquidation Consultant Agreement and for Authority to Conduct Going-Out-Of-Business-Sales* (the "Motion"), states to the Court as follows:

## JURISDICTION AND VENUE

1. On June 13, 2014 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of Missouri.

2. Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, Debtor is continuing to operate its business as a debtor in possession. No trustee or examiner has been appointed, and no official committee of creditors or equity interest holders has yet been established in this Chapter 11 case.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157. No prior request has been made to this Court or any other court for the relief sought herein.

4. By this Motion, Debtor seeks entry of an Order (i) to authorize the employment of Johnson and Associates (the "Consultant") as liquidating consultants for the Debtor; (ii) authorize Debtor to conduct going-out-of-business sales ("GOB Sales") pursuant to § 363 of the Code; and (iii) authorizing and directing Debtor to execute and deliver any documents, agreements, bills of sale, deeds, certificates of title, affidavits, or similar instruments to facilitate the GOB Sales.

## BACKGROUND

5. Debtor has been operating a retail mattress and bedding business since 2008.

6. The Debtor's primary assets consist of furniture, fixtures, equipment and inventory (the "Assets").

2

7. Currently, the Debtor operates a warehouse and nine (9) stores at the following locations:

1320 Bass Pro Drive
St. Charles, Missouri 63301
("St. Charles")

29 Clarkson Road
Ellisville, Missouri 63011
("Ellisville")

122 Lincoln Highway
Fairview Heights, Illinois 62208
("Fairview Heights")

1012 Loughborough Avenue
St. Louis, Missouri 63111
("Loughborough")

2326 Troy Road
Edwardsville, Illinois 62025
("Edwardsville")

884 Arnold Commons Drive
Arnold, Missouri 63010
("Arnold")

149 Eureka Towne Center
Eureka, Missouri 63025
("Eureka")

2525 Green Mount Commons Drive
Belleville, Illinois 62221
("Belleville")

135 High Ridge Commons Parkway
High Ridge, Missouri 63049
("High Ridge")

5324 Aero Drive
St. Louis, Missouri 63110
(Warehouse)

The properties shall be collectively referred to as the ("Stores").

8. The Debtor has not been able to restructure its business affairs to preserve the estate's going concern value. Without a successful plan to reorganize, Debtor has concluded that an immediate and orderly liquidation of its Assets will produce the greatest return for its creditors.

9. The Debtor seeks authority to conduct GOB Sales at each of its Stores, and to close and vacate the Stores by July 31, 2015. The Debtor believes that prompt and efficient closing of the Stores will yield the highest value for its Assets.

10. The Assets are subject to the lien and security interest of the Debtor's primary secured lender, DLJ Lending, LLC ("DLJ").

11. In anticipation of conducting GOB Sales and closing the Stores, Debtor is in the process of negotiating lease modifications with various landlords to terminate the leases effective July 31, 2015. The Debtor is willing and prepared to pay all continuing lease payment obligations to the landlords until the Debtor completely vacates the Stores.

## CONSULTING AGREEMENT

12. Debtor seeks an order pursuant to § 327(a) to enter into a Consulting Agreement with Johnson & Associates to consult with Debtor regarding the GOB Sales and to provide the necessary sales staff. A copy of the form Consulting Agreement is attached as **Exhibit A**.

13. Debtor anticipates that most of its staff will jump ship once it announces its plans to conduct the GOB Sales. For this reason, Debtor seeks to retain the Consultant to provide sales staff during the GOB Sales. The Consultant will provide its own salespeople and will hire several of Debtor's key salespeople. All salespeople will be independent contractors engaged by Consultant, not Debtor. Debtor believes that the cost of retaining the Consultant to provide the sales staff is significantly less than the cost to Debtor of providing retention bonuses.

14. In addition to providing necessary sales support, Consultant will assist Debtor with advertising the GOB Sales.

15. Pursuant to the Consulting Agreement, the Debtor will (i) pay the Consultant a fee of 8% of gross sales during the GOB Sales, and (ii) pay sales staff 7% of gross proceeds of sold merchandise. Payments to the Consultant and sales staff shall be made weekly.

16. Debtor will be responsible for all operational expenses of its Stores, including advertising, during the sales.

17. To the best of Debtor's knowledge, Consultant does not have any connection with the Debtor, its creditors or any other party in interest, or their or their respective attorneys or accountants.

18. Debtor believes Consultant is a "disinterested person" under Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code, and further believes that Consultant does not hold or represent an interest adverse to the estate. A copy of the Affidavit of Zachery Johnson (the "Johnson Affidavit") is attached hereto as **Exhibit B**.

## SALE OF ASSETS UNDER SECTION 363 OF THE BANKRUPTCY CODE

19. A trustee or debtor in possession may sell property of the estate outside of the ordinary course of business. 11 U.S.C. § 363(b)(1). A sale of assets outside the ordinary course of business is a matter within the Court's discretion. *In re Channel One Comm., Inc.*, 117 B.R. 493, 496 (E.D. Mo. 1990); *In re Apex Oil Co.*, 92 B.R. 847, 866 (Bankr. E.D. Mo. 1988). Although the Code does not set forth a standard for determining when it is appropriate to authorize a sale, courts typically will approve such sales if is justified by a sound business purpose. *In re Abbots Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3rd Cir. 1986); *In re Integrated Resources, Inc.*, 147 B.R. 650 (S.D.N.Y. 1992).

5

20. Under Section 363(f)(2) of the Bankruptcy Code, a sale free and clear of such liens is permissible if, among other things, (i) the secured lienholders consent, or (ii) the liens will be paid in full.

21. Since the Petition Date, Debtor has implemented cost reductions by closing underperforming stores, hiring consultants to train sales staff and eliminate inefficiencies in the workforce, and offer competitive merchandise selections to its customers. Despite its best efforts, Debtor is unable to successfully restructure its finances to propose a viable plan of reorganization.

22. If the GOB Sales are not allowed, Debtor likely would convert this case to a Chapter 7, resulting in a diminished liquidation value than what could be achieved through the GOB Sales.

23. Debtor has determined that, in its business judgment, the sale of its assets is in the best interest of the Debtor's Chapter 11 estate and its creditors.

24. Debtor does not believe any creditor claims in interest in its assets, other than DLJ. DLJ consents to the relief requested in this Motion.

25. In an abundance of caution, Debtor requests authority to sell its assets free and clear of any and all liens, claims and encumbrances in accordance with § 363(f) of the Code, with any such lien, claim or encumbrance to attach to the proceeds of the assets in the same order of priority.

26. Debtor will liquidate its Assets in an orderly fashion and will conduct only those business operations necessary to conduct the GOB Sales and close its Stores. A copy of the Debtor's Liquidating Budget is attached hereto as **Exhibit C**.

27. Debtor seeks authority to enter into transactions, execute and deliver any documents, agreements, bills of sale, deeds, certificates of title, affidavits, or similar instruments, to facilitate the GOB Sales and store closings without notice or hearing.

28. Further, Debtor requests authority to conduct the GOB Sales in each of its Stores notwithstanding any provision of the lease agreements. Debtor has valid pre-petition leases for each of its Stores. In the event that the lease agreements contain restrictions to prohibit the GOB Sales ("Lease Restrictions"), these restrictions should be deemed unenforceable. *See In re Libson Shops, Inc.*, 24 B.R. 693, 695 (Bankr. E.D. 1982); *In re R.H. Macy & Co.*, 170 B.R. 69, 77 (Bankr. S.D.N.Y. 1994).

29. Debtor will promptly conduct the GOB Sales and close its stores. Debtor is confident that the GOB Sales will comply with federal, state and local statutes and laws ("GOB Sale Laws") that regulate going-out-of-business and store closing sales. In an abundance of caution, Debtor requests authority to conduct the GOB Sales without the necessity of complying with any GOB Sale Laws that may restrict or delay the GOB Sales.

30. Finally, neither the Debtor's agreement with Consultant nor the GOB Sales will involve the sale or lease of "personally identifiable information" under Section 101(41A) of the Bankruptcy Code. For this reason, the Bankruptcy Code does not require the appointment of a consumer privacy ombudsman.

31. Based on the foregoing, Debtor's request is justified by sound business purpose.

WHEREFORE, Debtor respectfully requests that this Court:

(a) authorize Debtor to enter into the Consulting Agreement with Johnson & Associates;

(b) enter an order authorizing the Debtor to conduct GOB Sales at its Stores;

(c) authorize the Debtor to conduct the GOB Sales outside the ordinary course of the Debtor's normal business activities;

(d) authorize Debtor to sell its Asset free and clear of liens, claims and encumbrances;

(e) authorize Debtor to enter into transactions, execute and deliver any documents, agreements, bills of sale, deeds, certificates of title, affidavits, or similar instruments, to facilitate the GOB Sales and store closings;

(f) waive compliance with Lease Restrictions and GOB Sale Laws in connection with the GOB Sales; and

(g) for such other and further relief as the Court deems just and proper.

Respectfully submitted,

DESAI EGGMANN MASON LLC

By: /s/ Spencer P. Desai
SPENCER P. DESAI (#39877MO)
DANIELLE SUBERI (#59688MO)
7733 Forsyth Boulevard, Suite 2075
St. Louis, Missouri 63105
(314) 881-0800
Fax No. (314) 881-0820

ATTORNEYS FOR DEBTOR

8

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DISTRICT

| | | |
|---|---|---|
| In re: | ) | Case No.: 14-44811-399 |
| | ) | Honorable Barry S. Schermer |
| JAMAT, LLC, | ) | Chapter 11 Proceeding |
| | ) | |
| Debtor. | ) | EXHIBIT SUMMARY |

### EXHIBIT SUMMARY

Pursuant to L.R. 9040-1, the following exhibits are referenced in support of the *Motion for Authority to Enter into Liquidation Consultant Agreement and for Authority to Conduct Going-Out-Of-Business-Sales* filed by Debtor Jamat, LLC. Copies of these exhibits will be provided as required by Local Rules:

1. Exhibit A – Consulting Agreement with Johnson & Associates;
2. Exhibit B – Affidavit of Zachery Johnson;
3. Exhibit C – Liquidating Budget.

Respectfully submitted,

DESAI EGGMANN MASON LLC

By: /s/ *Danielle Suberi*
SPENCER P. DESAI (#39877MO)
DANIELLE SUBERI (#59688MO)
7733 Forsyth Boulevard, Suite 800
St. Louis, Missouri 63105
(314) 881-0800
Fax No. (314) 881-0820

ATTORNEYS FOR DEBTOR

**Johnson & Associates, LLC** enters into this contract on the date indicated below:
With JAMAT, LLC DBA MATTRESS SOURCE hereinafter referred as **CLIENT**. WHEREAS CLIENT desires to use the services and skills of Johnson & Associates, LLC to conduct a GOING OUT OF BUISNESS sale at STORE LOCATIONS DESCRIBED IN EXIBIT A. All exhibits referenced in this agreement are made part of this agreement.

NOW THEREFORE and in consideration of the mutual consents and promises herein contained and other good and valuable consideration, the parties hereto agree as follows:

1. CLIENT hereby retains Johnson & Associates, LLC to manage and conduct the sale of the inventory of CLIENT and any other merchandise brought in for this sale beginning on 04/17/2015 and ending 07/20/2015 provided however, CLIENT may extend by mutual agreement.

2. CLIENT will be responsible for the payment of all ordinary and necessary expenses incurred in the conduct of sale, including but not limited to: advertising, utilities and normal overhead and operating costs.

3. CLIENT will pay Johnson & Associates, LLC eight percent (8%) of gross sales, excluding gross sales incurred via sales of 'door buster' items, as determined and set forth by Johnson and Associates, LLC, beginning on April 17, 2015 and ending on July 20, 2015. Payment for these commissions will be collected on a weekly basis and dispersed every Tuesday morning via certified check made payable to Johnson and Associates, LLC or a confirmed wire transfer routed from the CLIENT account to the bank account information provided by Johnson and Associates, LLC.

4. Johnson & Associates, LLC will arrange temporary sales help who will be independent contractors and will be compensated by CLIENT at the rate of seven percent (7%) of gross proceeds of sold merchandise. Payment will be made every Tuesday morning.

5. Johnson & Associates, LLC Manager will collect a certified check or confirm a wire transfer on every Tuesday of each week for the 8% commission. The 7% commission paid to sales staff will be paid out of the existing CLIENT bank account.

6. Johnson & Associates, LLC will submit advertising copy for CLIENT final approval and CLIENT assumes all responsibility for its content and agrees to hold Johnson & Associates, LLC harmless for any and all claims, demands, causes of action incurred by or threatened against CLIENT and/or Johnson & Associates, LLC arising from or relating to advertising or the violation of any federal, state or municipal laws, regulations or ordinances regulating said retail sales, including but not limited to additions of merchandise during the sale. CLIENT is solely responsible for payment of all advertising. The use of any Johnson & Associates, LLC advertising material is strictly prohibited without permission from Johnson & Associates, LLC.

7. CLIENT will obtain any necessary licenses that might be necessary to conduct such a sale.

8. The Johnson & Associates, LLC sales manager will determine the selling price of all merchandise sold; however, the gross profit of the entire sale will not be less than __48__ %. In the event the gross profit of the entire sale was less than __48__ %, the lowest markup sales would be deducted until the markup reaches __48__ % calculated on total gross sales, not on individual or weekly rates. No commission would be paid to Johnson & Associates, LLC on this amount. Items classified by the Johnson & Associates, LLC sales manager as "door buster" items will not be counted in the overall gross profit margin. Johnson & Associates, LLC, its manager and salespeople will not be paid a commission on "door buster" sales. Advertising for this event should not exceed eight percent _8_ % of gross sales.

Dated this _____ day of _____, _____

Johnson & Associates, LLC
_____

_____   _____

EXHIBIT A

## Exhibit A

Jamat LLC (CLIENT) desires to use the services and skills of Johnson & Associates, LLC to conduct a <u>GOING OUT OF BUISNESS</u> sale at the following locations:

- 884 Arnold Commons Drive, Arnold, MO 63010
- 2525 Green Mount Commons #820, Belleville, IL 62221
- 2326 Troy Road, Edwardsville, IL 62025
- 149 Eureka Towne Center, Eureka, MO 63025
- 122 Lincoln Highway, Fairview Heights, IL 62208
- 135 High Ridge Commons Parkway, High Ridge, MO 63049
- 1012 Loughborough Avenue, St. Louis, MO 63111
- Mark Twain Village, 1320 Bass Pro Dr, Saint Charles, MO 63301
- 1035 Washington Square, Washington, MO 63090

In re:                                              )    Case No. 14-44811-399
                                                    )    Honorable Barry S. Schermer
JAMAT, LLC,                                         )
                                                    )    Chapter 11 Proceeding
                    Debtor.                         )

## AFFIDAVIT OF ZACHERY JOHNSON

I, Zachery Johnson, being duly sworn, declare as follows:

1. I and my firm, Johnson & Associates (the "Firm"), are qualified to provide liquidation advisory services necessary to the Debtor with respect to the above-captioned bankruptcy case.

2. Services to be provided in this proceeding include, but are not limited to:

   a) Manage and conduct sale of inventory for going-out-of-business sales;

   b) Provide sales force to conduct the sale of inventory from April 17, 2015 to July 20, 2015; and

   c) Assist Debtor in implementing its sales and marketing strategy.

3. Fees for services rendered to the Debtor are as follows: Debtor is to pay Firm eight percent (8%) of gross proceeds of sold merchandise; Debtor is required to pay seven percent (7%) of gross proceeds of sold merchandise to salespeople.

4. The Debtor does not owe Firm for pre-petition services.

5. To the best of my knowledge, neither the Firm nor I represent any interest adverse to those of the Debtor-in-Possession or its affiliates.

Upon my best knowledge and belief I declare under penalty of perjury that the above and foregoing is true and correct.

_____

STATE OF Louisiana      )
                        ) SS
COUNTY OF Jefferson     )

Subscribed and sworn to before me, a Notary Public, on 18th day of March, 2015.

_____
Notary Public

**EXHIBIT B**

## MATTRESS SOURCE LIQUIDATION

| Stores | April Budget 9.50% | May Budget 8.70% | June Budget 8.20% | July Budget 8.60% | Total Budget | Before Liquidation Advertising |
|---|---|---|---|---|---|---|
| Historical Volume | | | | | | |
| **Merchandise Revenue** | | | | | | |
| Arnold | 122,892.00 | 110,533.50 | 104,181.00 | 104,296.50 | 441,903.00 | |
| Belleville | 30,723.00 | 27,633.38 | 26,045.25 | 26,074.13 | 110,475.76 | |
| Edwardsville | 109,485.60 | 98,475.30 | 92,815.80 | 92,918.70 | 393,695.40 | |
| Eureka | 39,102.00 | 35,169.75 | 33,148.50 | 33,185.25 | 140,605.50 | |
| Fairview Heights | 53,067.00 | 47,730.38 | 44,987.25 | 45,037.13 | 190,821.76 | |
| High Ridge | 53,067.00 | 47,730.38 | 44,987.25 | 45,037.13 | 190,821.76 | |
| Loughbourough | 27,825.00 | - | - | - | 27,825.00 | |
| St. Charles | 53,067.00 | 47,730.38 | 44,987.25 | 45,037.13 | 190,821.76 | |
| Washington | 92,169.00 | 82,900.13 | 78,135.75 | 78,222.38 | 331,427.26 | |
| **Total** | 581,397.60 | 497,903.20 | 469,288.05 | 469,808.35 | 2,018,397.20 | |
| **Delivery/Install Revenue** | | | | | | |
| Arnold | 2,457.84 | 2,210.67 | 2,083.62 | 2,085.93 | 8,838.06 | |
| Belleville | 614.46 | 552.67 | 520.91 | 521.48 | 2,209.52 | |
| Edwardsville | 2,189.71 | 1,969.51 | 1,856.32 | 1,858.37 | 7,873.91 | |
| Eureka | 782.04 | 703.40 | 662.97 | 663.71 | 2,812.11 | |
| Fairview Heights | 1,061.34 | 954.61 | 899.75 | 900.74 | 3,816.44 | |
| High Ridge | 1,061.34 | 954.61 | 899.75 | 900.74 | 3,816.44 | |
| Loughbourough | 556.50 | - | - | - | 556.50 | |
| St. Charles | 1,061.34 | 954.61 | 899.75 | 900.74 | 3,816.44 | |
| Washington | 1,843.38 | 1,658.00 | 1,562.72 | 1,564.45 | 6,628.55 | |
| **Total** | 11,627.95 | 9,958.06 | 9,385.76 | 9,396.17 | 40,367.94 | |
| Store Revenue | 593,025.55 | 507,861.26 | 478,673.81 | 479,204.52 | 2,058,765.14 | |
| Cost of Goods | 250,000.97 | 214,098.38 | 206,486.74 | 206,715.67 | 877,301.76 | |
| Store Gross Profit | 343,024.58 | 293,762.89 | 272,187.07 | 272,488.84 | 1,181,463.38 | |
| Margins | 57% | 57% | 56% | 56% | | |
| Whse Gross Profit from Sales | | 25,000.00 | | 25,000.00 | 50,000.00 | |

EXHIBIT C

| | | | | | |
|---|---:|---:|---:|---:|---|
| Total Gross Profit | 343,024.58 | 318,762.89 | 272,187.07 | 297,488.84 | 1,231,463.38 |
| Expenses | | | | | |
| Commissions/1099 | 88,953.83 | 76,179.19 | 71,801.07 | 71,880.68 | 308,814.77 |
| Salaries | 39,756.00 | 49,695.00 | 39,756.00 | 49,695.00 | 178,902.00 |
| Advertising | 44,476.92 | 36,300.00 | 34,200.00 | 34,200.00 | 149,176.92 |
| Bank Service Charges | 8,895.38 | 7,617.92 | 7,180.11 | 7,188.07 | 30,881.48 |
| Computer & Internet | 1,643.00 | 1,643.00 | 1,643.00 | 1,643.00 | 6,572.00 |
| Fuel | 3,789.57 | 3,789.57 | 3,789.57 | 3,789.57 | 15,158.28 |
| Insurance | 5,127.17 | 2,127.17 | 2,127.17 | 2,127.17 | 11,508.68 |
| Payroll Taxes | 3,664.12 | 4,580.15 | 3,664.12 | 4,580.15 | 16,488.54 |
| Professional Fees | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 16,000.00 |
| Repairs & Maintenance | 1,107.00 | 1,107.00 | 1,107.00 | 1,107.00 | 4,428.00  50% OF AVG COST |
| Rent | 46,761.37 | 46,761.37 | 46,761.37 | 46,761.37 | 187,045.48 |
| THF Cure | 34,561.20 | | | | |
| Supplies | 1,150.00 | 1,150.00 | 1,150.00 | 600.00 | 4,050.00 |
| Telephone Expense | 2,400.00 | 2,200.00 | 2,200.00 | 2,200.00 | 9,000.00 |
| | | | | | - |
| Truck Repairs | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 4,800.00  NEW REPAIR GUY-JOE |
| Utilities | 4,733.00 | 4,733.00 | 4,733.00 | 4,733.00 | 18,932.00 |
| DLJ LENDING | 15,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 90,000.00 |
| Total Expenses | 307,218.56 | 268,083.37 | 250,312.41 | 260,705.01 | 1,051,758.15 |
| Net Profit | 35,806.02 | 50,679.52 | 21,874.66 | 36,783.84 | 179,705.24 |
| Cost of Goods | 250,000.97 | 214,098.38 | 206,486.74 | 206,715.67 | 877,301.76 |
| Needed Mo. Replinishment | 180,000.00 | 175,000.00 | 165,000.00 | 75,000.00 | 595,000.00 |
| Inventory Cost Reduction | | | | | |
| (ICR) | 70,000.97 | 39,098.38 | 41,486.74 | 131,715.67 | 282,301.76 |
| Net Profit Plus Cost Reducti | 105,806.99 | 89,777.90 | 63,361.40 | 168,499.51 | 462,007.00 * |

* Debtor shall hold back 20% of net profit for unanticipated expenses associated with going-out-of-business sales.
Remaining net profit to be apportion between DLJ Lending and DEM's professional fees in an amount to be determined.